NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. MOHAMED OSMAN MOHAMUD, Defendant-Appellant. | No. 14-30217 D.C. No. 3:10-cr-00475-KI-1 MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted July 6, 2016
Portland, Oregon

Before: PREGERSON, BEA, and OWENS, Circuit Judges.

Mohamed Osman Mohamud appeals from his jury conviction and thirty-year

sentence for attempted use of a weapon of mass destruction within the United

States, in violation of 18 U.S.C. § 2332a(a)(2)(A). As the parties are familiar with

the facts, we do not recount them here. We have jurisdiction under 28 U.S.C.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

§ 1291, and we affirm.[1]

**1.** Mohamud challenges the government's closing argument. Specifically, Mohamud contends that the government treated the entrapment defense as categorically unavailable by arguing that, based on the jury's own "common sense," an individual could not be entrapped to commit the charged offense. There was nothing improper about the government arguing that entrapment was unsupported by the facts because common sense suggested that someone could not be induced to commit a crime of this magnitude. The government did not imply that entrapment was unavailable as a matter of law.

Mohamud also contends that the government misstated the law, and diluted its burden of proof, by implying that predisposition to commit "similar acts" sufficed to prove predisposition to commit the charged offense. Although "evidence that merely indicates a generic inclination to act within a broad range . . . is of little probative value in establishing predisposition," *Jacobson v. United States*, 503 U.S. 540, 550 (1992), evidence of prior similar acts may be relevant to show predisposition. *See United States v. Williams*, 547 F.3d 1187, 1198 (9th Cir. 2008) (holding that the defendant was not entrapped as a matter of law into dealing

---

[1] A concurrently filed opinion, *United States v. Mohamud*, __ F.3d __ (9th Cir. 2016), addresses Mohamud's other arguments.

cocaine in part because his prior bank robbery and illegal gun sales "suggest[ed] that he was predisposed to this type of criminal activity"). Therefore, it was not improper for the government to argue that the jury could consider evidence of Mohamud's willingness to commit prior similar acts.

**2.** Contrary to Mohamud's contention, the district court provided adequate jury instructions. The instructions were consistent with case law and sufficiently encompassed the defense's theory of the case. *See United States v. Whittemore*, 776 F.3d 1074, 1078, 1080 (9th Cir. 2015) (Although "[a] defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence," he is "not entitled to the instructions of his choice." (citation omitted)). The district court also did not err in its response to a jury question about the entrapment instruction. *See United States v. Verduzco*, 373 F.3d 1022, 1030 n.3 (9th Cir. 2004) (setting forth standard of review). The response instructed the jury to consider "all" the evidence, and did not unfairly favor the prosecution's evidence over the defense's evidence.

**3.** Mohamud challenges the withholding and handling of classified materials under the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3. After reviewing the classified record, we are not persuaded by Mohamud's arguments regarding the classified materials.

The district court acted within its discretion in excluding information about the true identities of FBI undercover agents "Youssef" and "Hussein" and FBI undercover contractor "Bill Smith." *See United States v. Gil*, 58 F.3d 1414, 1421 (9th Cir. 1995) (explaining that a court "must weigh the defendants' rights to confront the government's witnesses against the government's interest in not compromising investigations and in protecting the informant's identity" (citing *Roviaro v. United States*, 353 U.S. 53, 60-62 (1957))). The district court also acted within its discretion in declining to make "Bill Smith" available as a witness at trial. *See id.*

In addition, the challenged substitution adequately satisfied CIPA's requirement that the summary "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. app. 3, § 6(c)(1); *see also id.* § 4. The classified record does not support that the government "selectively declassified" materials, thereby gaining an unfair advantage at trial. The classified record also does not support that discoverable information which was "relevant and helpful" to the defense was withheld, including information regarding Amro Al-Ali. *United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. 2013) (quoting *Roviaro*, 353 U.S. at 60-61).

4

Further, the district court did not abuse its discretion by using ex parte proceedings for classified materials and denying Mohamud's security-cleared counsel access to classified materials and proceedings. *See id.* at 908-09 (rejecting the defendant's challenge to ex parte CIPA procedures and stating that "the simple fact that defense counsel held security clearances does not mean that the attorneys were entitled to access the government's classified filings").

**4.** Mohamud challenges a number of the district court's evidentiary rulings. Although the district court likely did make several erroneous evidentiary rulings, any error was cumulatively harmless.

First, Mohamud contends that the district court erred in admitting an Interpol "Red Notice" seeking the arrest of Amro Al-Ali. *See* Gov't Exhibit 80. He similarly argues that it was error to admit various FBI agents' testimony explaining how their knowledge of the Red Notice and Al-Ali's status affected their targeting and investigation of Mohamud. Generally, evidence of agents' motivations or justifications for an investigation are irrelevant, even where entrapment is at issue. *See United States v. Makhlouta*, 790 F.2d 1400, 1402 (9th Cir. 1986) (explaining that under the entrapment standard, "it is not the state of mind of the government agent that is important; . . . it is the predisposition of the defendant . . . that counts" (first alteration in original) (citation and internal quotation marks omitted)); *see*

5

*also United States v. Dean*, 980 F.2d 1286, 1288 (9th Cir. 1992) (out-of-court statements which were probative of why officer took certain actions were inadmissible because they did "not bear on any issue involving the elements of the charged offense"). However, as the defense argued that the government targeted Mohamud because he was young and vulnerable, evidence that the government instead investigated him because of his communications with a "known terrorist" was relevant under Federal Rule of Evidence 401.[2] Nonetheless, only the testimony of the agents who actually directed the investigation was relevant to rebut Mohamud's "targeting" arguments; the comparable testimony of the undercover agents was not relevant, nor was the Red Notice itself.[3] Further, in several instances the government used this evidence for the truth of the matter asserted, rather than its effect on the agents.

Second, Mohamud argues that the district court erroneously restricted his cross-examination of the FBI agents' bias and motivation by treating inadvertently recorded government agent "outtakes" as prior inconsistent statements under

---

[2] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

[3] Because the Red Notice was admitted for a non-hearsay use, it did not violate Mohamud's right to confrontation. *See United States v. Wahchumwah*, 710 F.3d 862, 871 (9th Cir. 2012).

Federal Rule of Evidence 613. It is not clear that the court abused its discretion in so ruling, no error was by itself prejudicial, and any such errors were not cumulatively prejudicial. Mohamud was permitted to question the agents about the statements, and the only evidence excluded was the agents' tone of voice on the recording.

Third, Mohamud contends that the district court erred in permitting government witnesses to testify about what they believed Mohamud "meant" or was "thinking" in some of his recorded statements. We agree that the witnesses' speculation as to what Mohamud "meant" was not relevant under Rule 401.

Finally, Mohamud argues that the district court erred in excluding certain of his contemporaneous communications that reflected a lack of predisposition to commit the crime charged.[4] Such statements were admissible under Federal Rule of Evidence 803(3) as indicative of Mohamud's then-existing state of mind, and it was likely error to exclude them. The government's cited authority is not to the contrary. *Cf. United States v. Sayakhom*, 186 F.3d 928, 937 (9th Cir.), *amended by* 197 F.3d 959 (9th Cir. 1999) (holding that the defendant's statements were not admissible because they were statements of belief to prove the fact believed, which

---

[4] Mohamud was permitted to introduce some evidence of his contemporaneous state of mind, but some statements were excluded.

7

are inadmissible under the terms of Rule 803(3)).

With respect to cumulative error, "[t]here are some cases where the cumulative effect of multiple errors may so prejudice a defendant as to require reversal, even though no single trial error examined in isolation is sufficiently prejudicial to warrant reversal." *United States v. Cazares*, 788 F.3d 956, 990 (9th Cir. 2015). We consider here any error related to: (1) admitting the Red Notice and the undercover agents' related testimony,[5] and any improper hearsay use of the Red Notice; (2) excluding the recorded government agent "outtakes"; (3) allowing the agents to speculate about what Mohamud meant in certain recorded statements; and (4) excluding some of Mohamud's contemporaneous statements.

As a preliminary matter, the government failed to argue that the evidentiary errors were harmless, except with respect to the exclusion of Mohamud's contemporaneous statements. "Usually when the government fails to argue harmlessness, we deem the issue waived and do not consider the harmlessness of any errors we find." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100 (9th Cir. 2005). However, we have discretion "to consider harmlessness sua sponte in extraordinary cases." *United States v. Brooks*, 772 F.3d 1161, 1171 (9th Cir.

---

[5] The district court gave several limiting instructions that this evidence was relevant only for its effect on the agents' understanding ("mental state").

2014).  In doing so, we must consider "(1) the length and complexity of the record, (2) whether the harmlessness of an error is certain or debatable, and (3) the futility and costliness of reversal and further litigation."  *Id.* (quoting *Gonzalez-Flores*, 418 F.3d at 1101).  The second factor is the most important.  *Id.*

Here, in the context of the entire trial record, "the harmlessness of the error[s] is not reasonably debatable," and further litigation would be futile. *Gonzalez-Flores*, 418 F.3d at 1101.  Accordingly, we hold that any evidentiary errors were cumulatively harmless.

**5.**  The district court denied Mohamud's motion to suppress, in which he argued that the FBI's conduct related to a separate state police investigation was unconstitutional, and therefore later national security investigation evidence was the fruit of an illegal search.  The district court reasoned that the later national security investigation evidence was based on untainted, independent sources. Contrary to Mohamud's contention, the district court did not err by declining to determine whether the FBI's conduct violated Mohamud's constitutional rights. *See United States v. Crawford*, 372 F.3d 1048, 1053-54 (9th Cir. 2004) (en banc) (affirming denial of motion to suppress on attenuation grounds, and stating that the court "need not" decide whether the search violated the defendant's Fourth Amendment rights).

9

**6.** The district court did not abuse its discretion by denying Mohamud's security-cleared counsel access to classified materials under the Foreign Intelligence Surveillance Act of 1978 ("FISA"). *See* 50 U.S.C. § 1806(f) (providing that under FISA, "the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance"); *United States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987) (holding that FISA's ex parte in camera proceedings did not violate due process, even though defense counsel had high security clearances).[6] In addition, and as stated above, the summary of classified materials provided by the FBI adequately satisfied CIPA's requirement that the summary "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. app. 3, § 6(c)(1); *see also id.* § 4.

**7.** Finally, Mohamud argues that we should vacate his thirty-year sentence for two reasons, neither of which we find persuasive. First, we reject Mohamud's

---

[6] On appeal, Mohamud alternatively requested that we authorize supplemental briefing with defense access to the relevant classified FISA materials. We granted this request in part because, at our request post-argument, the government declassified certain facts about Mohamud's surveillance, and we permitted the parties to file supplemental briefs.

10

contention that his sentence should be vacated because the government's forty-year sentencing recommendation was allegedly based in part on unlawful considerations.

Second, Mohamud contends that the district court procedurally erred by failing to resolve his future dangerousness on an individualized basis and by failing to explain adequately its reasons for rejecting a departure from the terrorism criminal history enhancement under U.S.S.G. § 4A1.3. These contentions are belied by the record. The district court considered Mohamud's arguments and evidence about his purported lack of future dangerousness, weighed individualized mitigating and aggravating factors, and adequately explained its reasons for Mohamud's below-Guidelines thirty-year sentence. *See United States v. Sandoval-Orellana*, 714 F.3d 1174, 1181 (9th Cir. 2013) ("If the record 'makes clear that the sentencing judge listened to each argument' and 'considered the supporting evidence,' the district court's statement of reasons for the sentence, although brief, will be 'legally sufficient.'" (quoting *Rita v. United States*, 551 U.S. 338, 358 (2007))).

**AFFIRMED.**