**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lawrence A. TUBIOLO, Defendant–**
**Appellant.**

**No. 97–10213.**

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 9, 1997.*

Decided Jan. 26, 1998.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

William H. Callaway, Neis & Callaway, Tucson, Arizona, for defendant-appellant.

Robert L. Miskell, Assistant United States Attorney, Tucson, Arizona, for plaintiff-appellee.

Before: SKOPIL, D.W. NELSON, and TASHIMA, Circuit Judges.

D.W. NELSON, Circuit Judge:

Lawrence A. Tubiolo appeals his conviction on two counts of extortion, in violation of 18 U.S.C. § 894(a)(1). He challenges the district court's denial of his motion for judgment of acquittal on Count 4 of his indictment. He also argues that the guilty verdict on Count 2 was not supported by sufficient evidence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In February 1997, a federal jury convicted Tubiolo of two counts of using extortionate means to collect an extension of credit. The charges on which Tubiolo was convicted, Counts Two and Four, arose from Tubiolo's efforts to collect on loans made to Benjamin Cortez and Alex Ross.

*Count Two: Threats to Cortez*

In March 1990, Tubiolo loaned $35,000 in cash to Benjamin Cortez, a restaurant owner who needed money for a real estate project.

Cortez signed a promissory note as evidence of the loan. Under the note, the entire principal of the loan was due one year from the date of the loan, and Cortez was to make monthly interest payments in the amount of $379.00 for one year (amounting to an annual interest rate of 13 percent).

When the principal on the $35,000 note became due in March 1991, Cortez was unable to pay, and Tubiolo began to charge Cortez $1750 per month (a monthly interest rate of 5 percent). In September 1991, Cortez informed Tubiolo that he remained unable to pay off his debt. In response, Tubiolo changed the interest rate to a 24 percent annual rate for 90 days. According to Cortez, Tubiolo threatened to kill Cortez if the principal was not repaid after 90 days.

On October 11, 1991, Tubiolo and his associates, Ron Tankersley and Pete Ortiz, visited Cortez at his restaurant. The testimony of each of the witnesses regarding this incident varies. Cortez testified that, on their arrival, Tubiolo and Tankersley waited near the door while Ortiz came to Cortez at the bar, demanded the money, and attempted unsuccessfully to grab him by the neck. Cortez then suggested that they talk outside the restaurant. Once outside, Tubiolo allegedly threatened Cortez with violence if he did not pay. Although Tubiolo denies having made any threat, Ortiz' and Tankersley's testimony suggests that he did. Ortiz' testimony indicates, moreover, that the men went to Cortez' restaurant that day "to show an example" and to intimidate Cortez. This October 11, 1991 incident formed the basis of Count Two of the indictment against Tubiolo.

*Count Four: Threats to Ross*

In February 1990, Laurie Kalogirou loaned Alex Ross, her employer, approximately $7300 to expand his business. Ross was to pay back the principal within one year and to pay an annual interest rate of 15 percent.

A year later, however, Ross was unable to repay Kalogirou. By this time, Kalogirou had become romantically involved with Tubiolo. On February 8, 1992, Tubiolo and Ortiz visited Ross' companion, Deborah St. Germain, at her shop. St. Germain testified that the men "bullied their way into [her]

office" and told her that Ross "had a short future." Ortiz' testimony confirmed that Tubiolo told St. Germain, "You tell Alex [Ross] if he doesn't pay he has no future." This incident was the subject of Count 4 of the indictment against Tubiolo.

*Proceedings Against Tubiolo*

On October 11, 1995, a federal grand jury charged Tubiolo with a number of crimes, including extortion and income tax offenses. On February 10, 1997, Tubiolo was convicted of using extortionate means to attempt to collect extensions of credit to Cortez and Ross, in violation of 18 U.S.C. § 894(a)(1). On February 14, 1997, Tubiolo filed a motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33, arguing that he could not be convicted on Count 4 under section 894(a)(1) because there was no extension of credit between Tubiolo and Ross. Tubiolo also filed a motion for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(c), arguing that neither of his convictions was supported by sufficient evidence. The district court denied these motions on April 28, 1997, and Tubiolo timely appeals.

## STANDARD OF REVIEW

We review a denial of a Rule 29 motion de novo. *United States v. Bahena–Cardenas,* 70 F.3d 1071, 1072 (9th Cir.1995). We review an insufficiency of evidence claim in the light most favorable to the prosecution and will uphold the challenged verdict if *"any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also United States v. Iriarte–Ortega,* 113 F.3d 1022, 1024 n. 2 (9th Cir. 1997).

## ANALYSIS

*I.  Count Four*

We consider first Tubiolo's appeal from the district court's denial of his motion for acquittal on Count Four. Tubiolo argues that his conviction on Count Four should be reversed because the loan at issue was not an "extension of credit," as defined in 18 U.S.C.

§ 891(1). He also argues that there was insufficient evidence that he used "extortionate means," as defined in 18 U.S.C. § 891(7), in his attempt to collect payment on the loan. Both of these arguments are without merit.

*A. The loan was an "extension of credit."*

■ Title 18 U.S.C. § 894(a)(1), under which Tubiolo was convicted, prohibits knowing participation in "the use of any extortionate means (1) to collect or attempt to collect any extension of credit." The statute defines the phrase "to extend credit" as follows: "to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim . . . may or will be deferred." 18 U.S.C. § 891(1).

The loan from Kalogirou to Ross was clearly an "extension of credit." There is no dispute that Kalogirou made a loan to Ross. Under the statute's unambiguous definition, an extension of credit includes "any loan" *or* any agreement to defer repayment of a debt. In the instant case, there need not have been an agreement to defer repayment of the debt, as Tubiolo argues, because there was clearly a loan. Accordingly, the cases cited by Tubiolo in support of his position are inapposite because neither case involved an actual loan. *See United States v. Boulahanis,* 677 F.2d 586, 587 (7th Cir.1982) (involving extortion of "protection" payments); *United States v. Wallace,* 59 F.3d 333, 335 (2d Cir. 1995) (involving distribution of proceeds from stolen checks).

■ Tubiolo also argues that there was no extension of credit under the statute's definition, because he had not transacted directly with Ross—i.e., because Kalogirou had loaned Ross the money. This argument is also contradicted by the express language of the statute, which prohibits using extortionate means to collect "*any* extension of credit." *See* 18 U.S.C. § 894(a)(1) (emphasis added). In view of the fact that Congress intended for the statute to be used " 'with vigor and imagination,' " *United States v. Stauffer,* 922 F.2d 508, 512 (9th Cir.1990) (quoting legislative history), it makes little sense to limit its scope as Tubiolo proposes. As the district court observed, "It's hard to believe that Congress passed a statute that would apply only to a person loaning the money and not to the people actually directing the threat."

*B. There was sufficient evidence that Tubiolo employed "extortionate means."*

■ It is also clear that, viewed in the light most favorable to the government, a rational factfinder very reasonably could have concluded that Tubiolo's actions constituted "extortionate means." Section 891(1)(7) of the statute states, "An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(7). The jury in this case heard testimony that Tubiolo and an associate "bullied" their way into the office of Ross' girlfriend, demanded payment of the money owed by Ross, and told her that, if Ross did not pay, "he has no future." Combined with evidence that Tubiolo engaged in loan sharking activities and employed intimidating men to collect money for him, this evidence was sufficient to induce a rational factfinder to conclude that Tubiolo's behavior on this occasion constituted "extortionate means." Accordingly, the district court did not err in denying Tubiolo's Rule 29(c) motion.

*II. Count Two*

■ Tubiolo's challenge to the sufficiency of the evidence supporting his conviction on Count Two also lacks merit. The jury heard testimony from Tubiolo, Cortez, Ortiz and Tankersley describing the altercation at Cortez' restaurant. Ortiz testified that he, Tubiolo, and Tankersley went to the restaurant to scare Cortez into making payment. At the restaurant, Ortiz demanded payment and attempted to grab Cortez by the throat. Then, according to Ortiz's testimony, Tubiolo and Cortez began to argue, and Tubiolo told Cortez, "You better pay the money or I'll bite your f——ing nose off." Although Tubiolo denied on the stand that he threatened Cortez, he assumed the risk when he decided to testify that the jury would disbelieve him. *See United States v. Kenny,* 645 F.2d 1323,

1346 (9th Cir.1981). Under the deferential standard for evaluating insufficient evidence claims, *see Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, we cannot conclude that no rational factfinder would have convicted Tubiolo on Count Two.

## CONCLUSION

For the foregoing reasons, the district court's denial of Tubiolo's motions for a new trial and for a judgment of acquittal is AFFIRMED.