UNITED STATES of America, Plaintiff—Appellee,

v.

Solomon Michael GIORGIES, Defendant—Appellant.

No. 01–10047.

D.C. No. CR–S–99–209–RLH (RJJ).

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2001.

Decided Jan. 22, 2002.

Before HAWKINS and TASHIMA, Circuit Judges, and WILKEN,* District Judge.

* Honorable Claudia Wilken, United States District Judge for the Northern District of California, sitting by designation.

## MEMORANDUM **

Defendant Solomon Giorgies participated in a scheme whereby out-of-state checks in amounts less than $5,000 were deposited in Nevada bank accounts and, pursuant to a regulation requiring the release of such funds within forty eight hours of deposit, the money was withdrawn from the accounts before the checks had cleared. Defendant was convicted of bank fraud under 18 U.S.C. § 1344. He raises several issues on appeal, all of which lack merit. Therefore, we affirm the district court.

### I. *Rule 29 Motion*

■ We review *de novo* the trial court's ruling on a Rule 29 motion for acquittal. *United States v. Tubiolo,* 134 F.3d 989, 991 (9th Cir.1998). In doing so, we must view the evidence in the light most favorable to the government. *United States v. Bahena–Cardenas,* 70 F.3d 1071, 1072–73 (9th Cir.1995). Viewing the evidence in that light, the district court properly concluded that the release of funds required under the banking regulation provided the opportunity for the scheme, but was not an essential element of the crime. Thus, the district court did not err in denying defendant's Rule 29 motion for acquittal based on his claims that (1) the banking regulation paraphrased in the indictment did not apply to the conduct for which he was convicted; (2) no testimony indicated that the financial institution suffered a loss; and (3) the banking regulation should have been included in the jury instructions.

### II. *Rule 404(b) Evidence*

■ The decision to admit evidence of prior bad conduct is reviewed for abuse of discretion. *United States v. Hinton,* 31 F.3d 817, 822 (9th Cir.1994) (citing *United States v. Arambula–Ruiz,* 987 F.2d 599, 602 (9th Cir.1993)). The admission of evidence of defendant's similar uncharged deposit of a check drawn on insufficient funds into his own account and of his involvement in a solicitation of one of the witnesses to participate in a similar scheme satisfies the test for admissibility of Rule 404(b) evidence established in *United States v. Kindred,* 931 F.2d 609, 612–13 (9th Cir.1991). The prior conduct was substantiated by witnesses, including the defendant himself; the events were only six months and eight days earlier respectively; they were similar in that they involved depositing out-of-state checks of less than $5,000 and withdrawing funds within forty-eight hours; and they were offered to prove motive, intent, plan, knowledge, identity, and absence of mistake or accident. Furthermore, the court gave clear instructions to the jury regarding the limited purpose for which the evidence was introduced. Accordingly, the district court did not abuse its discretion by admitting Rule 404(b) evidence of prior bad acts related to the defendant's conduct in defrauding the bank.

### III. *Pretrial Identification*

■ The constitutionality of pretrial identification procedures is reviewed *de novo.* *See United States v. Montgomery,* 150 F.3d 983, 992 (9th Cir.1998). In *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that an in-court eyewitness identification following the use of pre-trial photographic identification procedures would violate due process rights and be set aside only if the photo identification procedures were "so impermissibly suggestive as to give rise to a very substantial

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

likelihood of irreparable misidentification." *Id.* Even if the photo array is suggestive, the subsequent identification is admissible if it is nonetheless reliable. *See United States v. Carbajal,* 956 F.2d 924, 929 (9th Cir.1992).

 Assuming *arguendo* that the photo array here was suggestive, the in-court identification by key witness Tari Effo was nevertheless reliable. Several factors must be considered in evaluating the likelihood of misidentification, including: (1) the opportunity of the witness to observe the defendant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty of the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Applying these factors, misidentification was highly unlikely. Effo met the defendant at a private gathering in July 1995, where they planned the banking scheme. A few days later, Effo met with the defendant and one other person at a casino to implement the plan; the defendant gave Effo the checks and instructions and drove Effo to deposit them in Effo's accounts. On July 21, 1995, the defendant and Effo met again; the defendant drove Effo to the banks to withdraw the funds and gave him his share. A few days later, when Effo received notice that he owed the bank the funds that had been wrongfully withdrawn, Effo searched extensively for the defendant and ultimately confronted him for the money in a convenience store.

In 1997, the FBI showed Effo a stack of photographs; FBI Agent Tumbleson stated that it did not include the defendant's picture but Effo testified at trial that he thought he remembered identifying the defendant at that time. Nevertheless, Effo

clearly identified the defendant in the FBI photo array in December 1999. Immediately prior to trial in December 1999 the defendant located Effo in person and told Effo to deny knowing him.

As described above, Effo's opportunities to observe the defendant were extensive. No evidence indicates that Effo was inattentive or distracted during these events. Despite an error in his description of the defendant's height and weight, he was certain of his identification of the defendant in the photo array of head shots. Although the time between the crime and the confrontation was several years, Effo interacted with the defendant again directly before the trial. Thus, the district court did not err in admitting evidence of Effo's in-court identification of the defendant.

## IV. *Handwriting Analysis*

 The admission of expert testimony is reviewed for an abuse of discretion when an objection is made at trial. *See United States v. Alatorre,* 222 F.3d 1098, 1100 (9th Cir.2000) (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 139, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). However, if other evidence overwhelmingly establishes guilt, any error regarding expert testimony is deemed harmless. *United States v. Wang,* 49 F.3d 502, 504 (9th Cir.1995); *Bates v. Nelson,* 485 F.2d 90, 95 (9th Cir.1974).

 In this case, the jury considered extensive evidence in the form of testimony from percipient witnesses regarding the charged crimes, subsequent contact with the defendant, banking practices, FBI interviews in the investigation of the bank fraud scheme, prior acts—including an admission of prior similar conduct by the defendant himself—and in-court identification. The expert testimony on handwriting did not play a significant role, in that the jury was provided with handwriting

examples allowing them to make an independent assessment. Even if the district court erred in failing to conduct a *Daubert* inquiry regarding the testimony of the handwriting expert, it was harmless in light of the overwhelming evidence against the defendant.

AFFIRMED.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.